## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Luana Pecore,

                          Plaintiff,

v.

Jennie-O Turkey Store, Inc.,

                          Defendant.

Civ. No. 13-1676 (RHK/JJG)
**MEMORANDUM OPINION
AND ORDER**

---

Bonnie M. Smith, Janet M. Olawsky, Matthew H. Morgan, Nichols Kaster, PLLP, Minneapolis, Minnesota, for Plaintiff.

Jillian Kornblatt, Ryan E. Mick, Dorsey & Whitney LLP, Minneapolis, Minnesota, for Defendant.

---

## INTRODUCTION

In this action, Plaintiff Luana Pecore alleges her former employer, Defendant Jennie-O Turkey Store, Inc. ("Jennie-O"), discriminated against her based on her sex and terminated her in retaliation for reporting health-code violations. In its Answer, Jennie-O asserts five state-law counterclaims against Pecore arising from her tenancy in Jennie-O's farmhouse after it had terminated her employment. Pecore now moves to dismiss the counterclaims for lack of jurisdiction. For the reasons set forth below, the Court will grant her Motion.

## BACKGROUND

Jennie-O is a brand of turkey products owned by Hormel. Pecore worked as a farm manager for Jennie-O from 2004 through December 2012. As farm manager, she

resided on a turkey farm owned by Jennie-O and cared for its turkeys.  In June 2012, Pecore voiced concerns to her supervisor (Danny Thomas), the human resources department, and the chemical department about the chemicals used on the farm.  She alleges that after her complaints, Thomas began a campaign of sexually discriminatory and retaliatory conduct toward her, including derogatory comments, unfounded performance warnings, and suspension, ultimately culminating in her termination on December 13, 2012.

In the instant action, Pecore alleges violations of Title VII of the Civil Rights Act of 1964, the Minnesota Human Rights Act, the Minnesota Occupational Safety and Health Act, and the Minnesota whistleblower statute.  Jennie-O filed an Answer asserting five Counterclaims against Pecore, each stemming from her tenancy in Jennie-O's farmhouse:  Breach of Contract (Counts I and II), Destruction of Real Property (Count III), Willful and Malicious Destruction of Leased Residential Property (Count IV), and Conversion (Count V).

Jennie-O alleges that Pecore failed to vacate the premises within 30 days of her termination, as required by her lease ("the Housing Agreement"), despite the fact that it notified her that her Housing Agreement was terminated when it terminated her employment on December 13, 2012.  It alleges Pecore remained in the house and continued to use utilities there until she vacated the premises on April 8, 2013.  Upon reentry, Jennie-O allegedly discovered she had damaged the property, requiring extensive cleaning and repair.  It contends that the damage was in retaliation for her termination

and seeks reimbursement for unpaid utilities, rent, the expense of cleaning and repairing the property, and its reasonable attorneys' fees and costs.

Pecore now moves to dismiss Jennie-O's counterclaims, arguing they are not compulsory counterclaims and the Court lacks jurisdiction over them.  The Motion has been fully briefed, the Court heard oral argument on November 20, 2013, and it is now ripe for disposition.

## STANDARD OF DECISION

When deciding a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) on the pleadings, a court must accept the claimant's factual allegations as true and view them in the light most favorable to the non-movant.  Great Rivers Habitat Alliance v. FEMA, 615 F.3d 985, 988 (8th Cir. 2010).  The party invoking federal jurisdiction bears the burden of establishing jurisdiction exists.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  The court must ensure it has subject-matter jurisdiction before proceeding.  Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A., 551 F.3d 812, 816 (8th Cir. 2009).  And as the court's jurisdiction is fixed by statute, the parties may not enlarge it by waiver or consent. Id.  Nor may the court assume hypothetical jurisdiction to proceed when its jurisdiction is in doubt.  Id.

## ANALYSIS

Federal courts are of limited jurisdiction, delineated by congress and extending only to diversity actions or actions arising under federal law.  It is undisputed that the parties in this case are not diverse, but the Court has original jurisdiction over Pecore's

- 3 -

Title VII claim because it arises under federal law.  The Court also has supplemental jurisdiction over "all other claims that are so related to" the Title VII claim that "they form part of the same case or controversy."  28 U.S.C. § 1367.  Such supplemental jurisdiction serves to prevent piecemeal litigation and promote efficient and fair resolution of cases by allowing the Court to resolve claims over which it would not otherwise have jurisdiction, had the claims been brought independently.

In this Motion, Pecore challenges the Court's jurisdiction over Jennie-O's counterclaims.  She argues the Court only has supplemental jurisdiction over compulsory counterclaims, as defined in Federal Rule of Civil Procedure 13(a), and that Jennie-O's counterclaims do not fall within this definition.  Jennie-O contends its counterclaims *are* compulsory and the Court has supplemental jurisdiction over them regardless.

The Court has jurisdiction over compulsory counterclaims, even if such claims could not have been brought independently in federal court.  Tullos v. Parks, 915 F.2d 1192, 1195 (8th Cir. 1990).  Rule 13(a) provides that a defendant's counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the [plaintiff's] claim."  Fed. R. Civ. P. 13(a).  The Eighth Circuit has articulated four tests to determine whether a claim and counterclaim arise out of the same "transaction or occurrence."  Cochrane v. Iowa Beef Processors, Inc., 596 F.2d 254, 264 (8th Cir. 1979). (1) Do they raise largely the same issues of fact and law?  (2) Would res judicata bar a subsequent suit on the defendant's counterclaim?  (3) Will substantially the same evidence support or refute them?  (4) Is there any logical relation between them?  Id.  If the answer to any of these is affirmative, the counterclaim is compulsory.

- 4 -

*Same Issues of Fact and Law*

Jennie-O's counterclaims do not raise the same issues of fact or law as Pecore's claims. At their base, both the claims and counterclaims stem from Pecore's employment with Jennie-O, but the factual similarities end there. While her employment is the *reason* Pecore lived in Jennie-O's housing, her conduct and treatment as an employee are not tied to her conduct as a tenant. Pecore's claims involve the terms and conditions of her employment as a farm manager, her job performance, her complaints to human resources and management, Thomas's subsequent treatment of her, Jennie-O's decision to terminate her employment, and the motivations behind that decision. None of these material facts is relevant to Jennie-O's counterclaims. The counterclaims involve the damage allegedly inflicted to its housing, the motivation behind the damage, the cost of repairs, the duration of her tenancy, and the terms of her lease.

Moreover, there is no allegation that the terms of Pecore's employment were tied to her conduct as a tenant. For example, Jennie-O does not allege it terminated her employment because of her (alleged) deficiencies as a tenant. To the contrary, Jennie-O alleges Pecore destroyed its property in retaliation for terminating her employment. This allegation implies the claims and counterclaims do not even share a timeline—Pecore's claims involve events between the parties leading up to and culminating in the termination of her employment, and Jennie-O's counterclaims involve Pecore's conduct after her termination.

Nor do the claims and counterclaims share issues of law. None of the elements of breach of contract, destruction of property, or conversion overlaps with elements of

- 5 -

discrimination, retaliation, or whistleblowing.  In sum, the claims and counterclaims do not raise the same—or even similar—issues of law or fact.

*Res Judicata*

Res judicata would not bar a subsequent suit on Jennie-O's counterclaims absent the compulsory-counterclaim rule.  Res judicata, or "claim preclusion," bars parties from re-litigating the "same cause of action."  <u>Nelson v. Am. Family Ins. Group</u>, 651 N.W.2d 499, 511 (Minn. 2002).  Pecore's and Jennie-O's claims are not sufficiently similar to constitute one or the same "cause of action."  As they do not share issues of law or fact, a decision by this Court on Pecore's claims will have no impact on a determination of Jennie-O's claims.  The parties' claims are not so related that a court "would ordinarily be expected to try them all in one judicial proceeding."  <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 725 (1966).

*Same Evidence*

Proof of Pecore's and Jennie-O's claims and defenses will not require substantially the same body of evidence.  As Jennie-O properly contends, proof of the parties' respective claims *will* require the testimony of overlapping witnesses— specifically of Pecore, her supervisor, and an employee from Jennie-O's human resources department.  But the subject matter of their testimony with respect to the claims and counterclaims barely overlaps, making the consolidation of them into one action of limited value.  Jennie-O also asserts that Pecore's poor maintenance of its farmhouse is indicative of her generally poor attitude and will therefore be relevant to its defense against her discrimination and retaliation claims.  But even assuming such evidence

would be admissible as part of Jennie-O's defense, this "commonality" is far from substantial.  Perhaps unsurprisingly, given their disparate subject matters and timelines, Jennie-O has offered no other evidence relevant to both the claims and counterclaims.

*Logical Relation*

Finally, the claims and counterclaims lack the sort of logical relationship that would require them to be litigated together.  The "logical relationship" test "requires a determination of whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one case."  Blue Dane Simmental Corp. v. Am. Simmental Ass'n, 952 F. Supp. 1399, 1410 (D. Neb. 1997) (quotation omitted).  For example, in Tullos, the Eighth Circuit found claims and counterclaims had a logical relation because they were all triggered by the same event—a shareholder's tender offer—and the parties' asserted them in furtherance of a common goal—to gain control of the company.  915 F.2d at 1196. Tullos explained:  "To put the matter simply, all the claims asserted by both sides in this case are part of the fight between the parties for control of [two related corporations]." Like Tullos, the claims and counterclaims here were all triggered, to some extent, by the same event—Pecore's termination.  But unlike Tullos, that triggering event serves to *divide* the claims and counterclaims—into those which arose from conduct before her termination versus after—rather than *unite* them.  And, unlike Tullos, the parties do not share a common goal.

Jennie-O argues that Pecore herself has provided a sufficient logical relation between the claims and counterclaims by implying in her Memorandum that the

counterclaims are yet another manifestation of Jennie-O's retaliatory animus toward her. But this is all the more reason to separate them.  Such hints at malicious prosecution would only to serve to confuse or prejudice a jury if the claims were tried together.  On balance, the Court does not consider these claims to have the sort of logical connection that dictates trying them together—joint resolution would not be more efficient or fairer.

In sum, Jennie-O's counterclaims do not arise out of the same transaction or occurrence as Pecore's claims and, as such, are not compulsory counterclaims.  Nor are the claims and counterclaims part of the "same case or controversy" as required by § 1367.

Claims form part of the "same case or controversy" if they share a "common nucleus of operative fact"—that is, if there is some "discernible overlap" between the claims.  Hunt v. Up North Plastics, Inc., 980 F. Supp. 1042, 1045 (D. Minn. 1997) (Tunheim, J.).  Pecore's claims and Jennie-O's counterclaims do not share a "common nucleus of operative facts."  They share only two facts: Pecore was employed by Jennie-O and on December 13, 2012, Jennie-O terminated her employment.  The parties' employment relationship alone is too narrow an overlap to support the Court's jurisdiction.  See, e.g., Ahle v. Veracity Research Co., 641 F. Supp. 2d 857, 865 (D. Minn. 2009) (Montgomery, J.); Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 468 (S.D.N.Y. 2008); Equus Comp. Sys., Inc. v. N. Comp. Sys., Inc., No. 01-657, 2001 WL 1640098, at *3 (D. Minn. Nov. 14, 2001) (Frank, J.).  This is especially true in the instant case, where Jennie-O's counterclaims do not stem from Pecore's conduct as an employee, but rather her conduct as a tenant.  The Court's supplemental jurisdiction

cannot reach Jennie-O's counterclaims without a stronger factual bridge connecting them to Pecore's claims.

### CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Pecore's Motion to Dismiss (Doc. No. 10) is **GRANTED** and Counts I through V of Defendant's Answer and Counterclaims (Doc. No. 7) are **DIMISSED WITHOUT PREJUDICE**.

Dated:  January 7, 2014

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge
